IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CARL AUTH,                          )
                    Plaintiff )
                                    )
        vs.                         ) Civil Action No. 05-672
                                    ) Judge David Stewart Cercone/
COMMISSIONER OF SOCIAL              ) Magistrate Judge Amy Reynolds Hay
SECURITY,                           )
                    Defendant )

REPORT AND RECOMMENDATION

I.   RECOMMENDATION

        It is respectfully submitted that the Motion for

Summary Judgment filed by Plaintiff [Dkt. No. 6] be denied.  It

is further recommended that the Motion for Summary Judgment filed

by Defendant [Dkt. No. 8] be granted and that the decision of the

Commissioner denying Plaintiff's application for disability

insurance benefits be affirmed.

II.  REPORT

    A.   **Procedural History**

        Plaintiff, Carl E. Auth, brought this action under 42

U.S.C. § 405(g), seeking judicial review of the final decision of

the Commissioner of Social Security ("Commissioner") denying his

claim for disability insurance benefits ("DIB") under Title II of

the Social Security Act (the "Act"), 42 U.S.C. §§ 401-433.

        In his application filed on May 30, 2003, Plaintiff

claimed disability since January 7, 1987, due to depression,

degenerative disc disease of the cervical spine with status post

cervical surgeries including spinal fusion, diverticulitis, and chronic obstructive pulmonary disease with emphysema (Tr. 50-52, 59).[1]  The state agency denied his claim and Plaintiff subsequently requested a hearing before an administrative law judge ("ALJ") (Tr. 37).

A hearing was held on November 16, 2004, at which time Plaintiff, who was represented by counsel, and a vocational expert ("VE") were called to testify (Tr. 296-326).  The ALJ issued a decision on November 24, 2004, finding that Plaintiff had the residual function capacity to perform a significant range of light work (Tr. 23, Finding No. 13) and, therefore, was not disabled under the Act (Tr. 23, Finding No. 14).  The Appeals Council denied Plaintiff's request for review on March 24, 2005, making the ALJ's decision the final decision of the Commissioner (Tr. 5-7).

**B.   Factual Background**

Plaintiff was born on January 14, 1942, and, thus, was 62 years old at the time of the hearing (Tr. 298).  Plaintiff has a high school education and received some vocational training in ground handling and service of aircraft between 1960 and 1965 while he was in the military (Tr. 298-99).  Plaintiff claims that

---

[1]     Plaintiff apparently filed an earlier application for DIB on February 3, 1999, which was denied on reconsideration and no appeal was taken (Tr. 16).

prior to June of 1993 he was unable to continue working as a custodian because of constant back pain and spasms (Tr. 300).[2]

### C.   Medical History[3]

In January 1987, Plaintiff injured himself at work and in April 1987, he had an excision of the C5-C6 disc with silastic replacement (Tr. 83).  In November 1987, he had a cervical spine manipulation and in May 1988, he underwent a C5-C6 disc fusion (Tr. 82-83).  Chest x-rays in May 1988, showed parenchymal scarring and pleural thickening, left mid-lung (Tr. 87).

In February 1993, Plaintiff was admitted to the hospital due to acute diverticulitis (Tr. 91-94).  He was also diagnosed with Type II Hyperlipidemia; early nodular goiter; asbestos related lung disease, pleural plaque, and thickening; bullous disease of the lung secondary to smoking; and polyp of the gallbladder (Tr. 92).  He was alert and oriented, had good coordination and strength in his upper and lower extremities, and had no tenderness in his back, although he had marked tenderness in the left lower quadrant of his abdomen (Tr. 94).  Plaintiff was provided antibiotics and hydration for his diverticulitis and was stable when he was discharged in March 1993 (Tr. 92).

---

[2]   Because Plaintiff last met the insured status requirements of the Act on June 30, 1993, he must establish that he was disabled on or before that date in order to qualify for DIB (Tr. 31).  See 20 C.F.R. § 404.101 (2004).

[3]   The Court has largely accepted, and reiterates here, the factual statement of the Commissioner found in her Brief as the more detailed account of Mr. Auth's history.

While Plaintiff was in the hospital, Steven G. Basheda, D.O., conducted a pulmonary evaluation and noted that Plaintiff had mild dyspnea on exertion, especially climbing stairs, but was essentially not limited in performing the activities of daily living (Tr. 106).  A CT scan of Plaintiff's chest showed a large area of bullous emphysema, some chronic changes, and bilateral pleural thickening and pleural calcifications (Tr. 108).  Plaintiff denied any chronic cough, phlegm production, or wheezes and moved all extremities without limitations (Tr. 106-07).  Dr. Basheda diagnosed asbestos related lung disease - pleural plaque/thickening and bullous disease of the lung, secondary to smoking (Tr. 107).  He recommended full pulmonary function tests and a repeat of the CT scan of the chest in one year (Tr. 107).  Pulmonary function studies showed a moderate obstruction and reduced diffusion (Tr. 104-05).

In May 1993, Plaintiff underwent an operation to remove his gallbladder (Tr. 111-17).  X-rays of his chest showed chronic lung disease (Tr. 199).  M.S. Kavic, M.D., noted that Plaintiff's muscle strength in his upper extremities was good, he had "some limits" in the range of motion with a lateral left turn and upward gaze of the head, and the right turn and extension were normal (Tr. 116).

In October 1993, Plaintiff was admitted to the hospital due to acute diverticulitis (Tr. 118-30).  He was treated with

antibiotics, given instructions regarding diet, activity, and medications and discharged four days later (Tr. 118).

In November 1993, Plaintiff went to the emergency room due to low abdominal pain (Tr. 192-93). His extremities were within normal limits and he was in no acute distress (Tr. 192). He was prescribed antibiotics, an anti-inflammatory and discharged (Tr. 193).

In December 1993, it was reported that Plaintiff had slight limitations of range of motion on lateral turn of the neck, but otherwise the neck was supple (Tr. 187). His muscle strength was normal and coordination was good (Tr. 188).

In March 1994, Plaintiff underwent a colonoscopy (Tr. 179-82, 184-85).

In October 1994, x-rays showed significant abnormalities of the lumbosacral and degenerative changes of the thoracic spine (Tr. 176).

Plaintiff was treated by Daniel M. Bubenheim, M.D., from February 8, 2001, through May 27, 2003 (Tr. 209-72). Dr. Bubenheim treated Plaintiff for depression, cervical disc problems, lung problems, diabetes, high cholesterol, and other ailments (Tr. 209-72). Dr. Bubenheim prescribed Paxil, Lipitor, insulin, Percocet, and other medications for Plaintiff's various ailments (Tr. 228-29, 246). In December 2002, and February 2003,

Plaintiff complained of pain in his back and of back spasms (Tr. 214, 217).

In June 2001, x-rays showed that Plaintiff had an enlarged heart with left lower lobe consolidation and effusion (Tr. 144). In January 2002, x-rays of Plaintiff's chest showed diffuse bullous emphysema and possible infiltrate at the left lung base (Tr. 136). In December 2002, x-rays of his right hip showed minimal degenerative changes (Tr. 133) and in February 2003, X-rays of the left shoulder and thoracic spine showed degenerative changes around the AC joint (Tr. 132).

On August 26, 2003, V. Ramakumar, M.D., prepared a residual functional capacity assessment for the period prior to Plaintiff's date last insured, June 30, 1993 (Tr. 273-80). Dr. Ramakumar opined that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, stand/walk six hours, sit six hours, and had unlimited push/pull ability (Tr. 274). Plaintiff had occasional postural limitations and should avoid even moderate exposure to extreme cold and heat, wetness, humidity, and fumes (Tr. 275, 277). Dr. Ramakumar also opined that based on the evidence of record and Plaintiff's physical status his allegations were partially credible (Tr. 278).

On November 4, 2004, Robert Durning, M.D., an orthopedic surgeon, sent a letter to Plaintiff's counsel and opined that Plaintiff had physical restrictions of the

musculoskeletal/neuromuscular system that would limit him to modified sedentary-level activity (Tr. 282-85).  Dr. Durning did not examine Plaintiff but formulated his opinion by reviewing Plaintiff's medical records from February 1987, through May 1992 (Tr. 282-85).

After the ALJ issued her decision, Plaintiff submitted an addendum to Dr. Durning's letter to the Appeals Council (Tr. 287).  In this letter, dated November 17, 2004, Dr. Durning stated that Plaintiff would be ineligible to perform "most, and nearly all types of gainful employment" and was restricted to part-time sedentary activity (Tr. 287).  Dr. Durning indicated that his opinion was based on a review of the medical records and that he believed Plaintiff had these functional limitations since at least 1987 and that they were "present (before and since) June 30, 1993" (Tr. 287).

**D.   Hearing Testimony and ALJ Decision**

At the administrative hearing, Plaintiff testified that he stopped work in January 1987, due to neck and back pain (Tr. 300, 302).  He also claimed that he would be short of breath when he carried boxes up the steps and that his respiratory problems "slowed" him down (Tr. 301).  He testified that he began receiving workmen's compensation after he was injured at work and he is still receiving workmen's compensation (Tr. 305).  He had two operations on his neck that were unsuccessful and now has

scar tissue pressing on his nerves which precludes him from
having further surgery (Tr. 302, 304, 313, 317, 319). Plaintiff
contends that physical therapy did not help and that he takes
over-the-counter Motrin for pain (Tr. 304, 316).

Further, when asked whether he does any household
chores, Plaintiff allowed that he might help his wife throw a
load of laundry in the washing machine, that he can put dishes in
the dishwasher, although he can't stand at the sink and wash
dishes, and that he can cut grass with a self-propelled mower
(Tr. 306-07). He watches television, does crossword puzzles, and
was able to go fishing "later on" after the accident but has not
fished in the past two or three years (Tr. 308-09).

Plaintiff claimed that he developed depression in the
late 1980's, for which he was prescribed Zoloft from his family
doctor, but he did not go to a psychiatrist (Tr. 309). He also
claimed that he was admitted to the hospital when he once wanted
to commit suicide (Tr. 310). He began driving again toward the
end of the 1980's and still has his driver's license (Tr. 310-
11). Plaintiff testified that his pain did not affect his
ability to walk and he can walk a quarter to a half mile
(Tr. 312). He claimed that since his surgeries he is tired and
falls asleep during the day (Tr. 319-20).

At the time he applied for benefits, Plaintiff reported
that he goes to church once a week, goes to doctor appointments

when needed, goes grocery and mall shopping with his wife, sometimes goes to high school football games, and goes to the movies three times a year (Tr. 78).  He watches television for six hours each day, plays games on the computer, reads the Bible and goes to a weekly study group for two hours, drives three hundred to three hundred and fifty miles each month, can take public transportation, visits with friends, goes out to dinner, and goes for sightseeing rides (Tr. 80-81).  He reported that he is unable to sleep through the night, but takes no daytime naps (Tr. 81).

The VE testified that Plaintiff's past work was medium and skilled (Tr. 322-23).  The ALJ asked the VE to consider an individual of Plaintiff's age (fifty-one years on the date that he was last insured), education, and vocational background, who was limited to light work and was limited in the following areas: ability to reach overhead; ability to push and pull in his lower and upper extremities; exposure to heights; exposure to dust, fumes, odors, gases, and chemicals; and exposure to temperature extremes (Tr. 323-24).  Based upon this hypothetical question, the VE testified that such an individual could perform light jobs such as cashier, file clerk, and assembler all of which exists in significant numbers in the national economy (Tr. 324-25).  If, however, the individual had to take unscheduled

breaks to rest throughout the day and change positions as needed, the VE testified that he would not be able to work (Tr. 325).

Based on this evidence the ALJ found that Plaintiff had severe impairments but that they did not meet or equal the impairment listings in 20 C.F.R. pt. 404, App. 1, Subpart P (Tr. 22-23).  The ALJ also found that although Plaintiff's limitations did not allow him to perform a full range of light work he retained the residual functional capacity to perform a significant range of light work that existed in the national economy and, thus, was not disabled (Tr. 23).

**E.    Standard of Review**

Presently before the Court are the parties' cross-motions for summary judgment.  In reviewing the administrative determination by the Commissioner, the question before the court is whether the Commissioner's decision is supported by substantial evidence.  42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987).  Substantial evidence is defined as less than a preponderance and more than a mere scintilla.  Perales, 402 U.S. at 402.  If supported by substantial evidence, the Commissioner's decision

must be affirmed.  Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

A five-step process is used to determine disability eligibility.  See 20 C.F.R. § 404.1520.[4]  Here, the ALJ determined that Plaintiff was not disabled at the fifth step which requires the Commissioner to prove that, considering the claimant's residual functional capacity,[5] age, education, and past work experience, he can perform work that exists in significant numbers in the regional or national economy.  42 U.S.C. § 423(d)(2)(A).  See Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987); Sykes v. Apfel, 228 F.3d 259, 263 (3d Cir. 2000).

**F.   Discussion**

Plaintiff makes four arguments in this case.  He first argues that the ALJ erred by not giving sufficient weight to Dr. Durning's functional assessment in which he concluded, based solely on his review of Plaintiff's medical records, that Plaintiff was limited to modified sedentary-level activity (Tr. 282-85).  In particular, Plaintiff faults the ALJ for

---

[4]   The five-step sequential evaluation process for disability claims requires the Commissioner to consider whether a claimant: (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his past relevant work, and (5) if not, whether he can perform any other work in the national economy.  20 C.F.R. §§ 404.1520, 416.920.

[5]   A claimant's "residual functional capacity" is what he can do despite the limitations caused by his impairments. Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001).

rejecting Dr. Durning's opinion as not providing specific clinical findings to support his assessment, since Dr. Durning pointed out clinical findings of other doctors in his report.

The regulations provide that certain issues are reserved exclusively to the ALJ, including the assessment of a claimant's residual functional capacity and whether he meets the statutory definition of disability.  20 C.F.R. §§ 404.1527(e)(1)-(2).  Even a treating physician's opinion about a claimant's ability to work is not entitled to any "special significance." 20 C.F.R. §§ 404.1527(e)(1)-(3).  See Social Security Ruling ("SSR") 96-5p, 1996 WL 374183 *2.  Moreover, in determining the weight to be given to a medical opinion, the ALJ considers the examining relationship, the treatment relationship, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency, specialization, and other factors.  See 20 C.F.R. §§ 404.1527(d)(1)-(6), 416.927(d)(1)-(6).  The Commissioner is not bound even by a treating physician's opinion and may reject it if there is a lack of clinical data supporting it or if there is contrary medical evidence.  See Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir. 1988); Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir. 1985).

Here, the ALJ acknowledged that Dr. Durning provided "an extensive summary of Plaintiff's medical history, including

the results of diagnostic studies and Plaintiff's various surgeries," but found that he failed to indicate what specific clinical findings supported his assessment of Plaintiff's residual functional capacity (Tr. 20). Indeed, it appears that Dr. Durning merely provided a recitation of Plaintiff's medical history and then made a conclusory statement that Plaintiff could perform only modified sedentary-level activities without providing an explanation for this conclusion (Tr. 20, 282-85). Moreover, Dr. Durning never treated or examined Plaintiff and failed to provide the medical records upon which he based his opinion (Tr. 282-85). Under these circumstances, it appears that the ALJ properly afforded no weight to Dr. Durning's conclusory opinion that Plaintiff could perform only modified sedentary-level activities (Tr. 20).

Plaintiff also argues that Dr. Durning's assessment is entitled to more weight because the only medical opinion contrary to Dr. Durning's assessment was that of the state agency physician. Moreover, Plaintiff complains that the ALJ did not specifically state that she was relying on the state agency physician in reaching her decision. The ALJ, however, indicated that she considered all medical opinions in reaching her decision regarding Plaintiff's residual functional capacity (Tr. 23, Finding No. 6), and also noted that she evaluated the evidence pursuant to SSR 96-2p and SSR 96-6p, which relate to the opinions

13

of treating physicians and state-agency physicians, respectively
(Tr. 19).

It is the duty of the ALJ, and not the reviewing court,
to resolve conflicts in the medical evidence. Richardson v.
Perales, 402 U.S. 389, 399 (1971).  It is also the duty of the
ALJ, and not the physicians, to assess a claimant's residual
functional capacity.  20 C.F.R. § 404.1546(c).  In this case, the
ALJ relied on the totality of the evidence in making her
determination regarding Plaintiff's residual functional capacity
and, as already discussed, properly determined that Dr. Durning's
assessment should not be afforded any weight.

As well, Plaintiff argues that the ALJ erred because
she did not consider Dr. Durning's November 17, 2004, follow-up
letter in which he noted that after reviewing all of Plaintiff's
medical records he was of the opinion that Plaintiff had
substantial functional impairments related to
musculoskeletal/neuromuscular problems which restricted him to
part-time sedentary activity.  Dr. Durning also stated that, in
his view, Plaintiff had these impairments "since at least 1987"
and that "they were present (before and) since June 30, 1993"
(Tr. 287).

Dr. Durning's follow-up letter, however, was submitted
to the Appeals Council and was not part of the record before the
ALJ.  Because it was never seen by the ALJ it is not properly

14

considered in determining whether the ALJ's decision was supported by substantial evidence.  Matthews v. Apfel, 239 F.3d 589, 593-95 (3d Cir. 2001).  Rather, this evidence may only be considered to determine if Plaintiff is entitled to a remand based on "new evidence."

In order to fulfill the requirements for a remand under sentence six of 42 U.S.C. § 405(g), it is Plaintiff's burden to show that the newly presented evidence is "new" and "material" and that there was "good cause" for his failure to present that evidence to the ALJ.  Id.

Here, Plaintiff has not met his burden or even attempted to show that Dr. Durning's November 17, 2004 letter was "new" or "material" or that there was "good cause" for his failure to submit it to the ALJ.  Accordingly, Plaintiff has failed to demonstrate that the record submitted for the first time to the Appeals Council meets the requirements for a sentence six remand.

This notwithstanding, it should be noted that Dr. Durning's follow-up letter adds little to his earlier report except to conclude that Plaintiff's functional impairments existed since 1987 (Tr. 287).  As before, the letter does not discuss the basis for his conclusion or any clinical finding that would support it and, thus, does not provide the basis for

15

finding that the ALJ's decision is not supported by substantial evidence.

Next, Plaintiff argues that the ALJ erred because she did not state what, if any, evidence she relied upon in determining Plaintiff's residual functional capacity and that, even though the state agency physician's findings would support the ALJ's conclusion in this regard, any reliance she placed on the state physician's assessment was in error since he did not have all of the medical records to review and he did not include clinical findings.

The assessment of a claimant's residual functional capacity, or what a claimant can do despite his impairments, is an issue reserved to the ALJ.  20 C.F.R. §§ 404.1527(e)(2), 404.1545.  As previously noted, the ALJ relied on all of the evidence of record, including all of the medical opinions, in determining that Plaintiff could perform modified light work (Tr. 23, Finding No. 6).  Specifically, the ALJ noted that in January 1987, Plaintiff injured himself while working and in April 1987, he had an excision of the C5-C6 disc with silastic replacement (Tr. 19, 83).  In November 1987, he had a cervical spine manipulation and in May 1988, he underwent a C5-C6 disc fusion (Tr. 82-83).  Although the ALJ acknowledged that Plaintiff had difficulty during this two-year period, the objective evidence

16

did not support a finding that Plaintiff was totally disabled
during this time period (Tr. 19).

Moreover, as noted by the ALJ, although the evidence
shows very few details regarding Plaintiff's musculoskeletal
status after May 1988 (Tr. 19), the hospital records reveal few
problems.  Indeed, records from February 1993, reflect that
Plaintiff was alert and oriented, had good strength in his upper
and lower extremities, had good coordination, and had no
tenderness in his back (Tr. 94).  Dr. Basheda noted that
Plaintiff was essentially not limited in performing the
activities of daily living and Plaintiff moved all extremities
without limitations (Tr. 106).  In May 1993, the hospital records
reflect that he maintained good muscle strength (Tr. 116).  In
October 2003, only three months after Plaintiff's date last
insured, the medical records reflect that his extremities were
within normal limits and he was in no acute distress (Tr. 192).
In December 1993, hospital records reflect that Plaintiff had
slight limitations of range of motion on lateral turn of the neck
but otherwise the neck was supple (Tr. 187).  His muscle strength
was normal and his coordination was good (Tr. 188).

Further, as Plaintiff concedes, the ALJ's decision is
also supported by the state-agency physician's assessment (Tr.
273-80).  While the state agency physicians are non-examining
physicians, they "are highly qualified physicians and

17

psychologists who are also experts in Social Security disability evaluation." 20 C.F.R. § 404.1527(f).  Indeed, it is well established that an ALJ may rely on the opinions of non-examining physicians, even when those opinions contradict the opinion of a treating physician, if the opinions are consistent with the record.  Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991); Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984).

Although Plaintiff argues that the state-agency physician's assessment is deficient because he did not include clinical findings and did not have all of the medical records to review, as already discussed, the assessment of a claimant's residual functional capacity, or what a claimant can do despite his impairments, is an issue reserved to the ALJ.  20 C.F.R. §§ 404.1527(e)(2), 404.1545.  In this case, the ALJ considered all of the medical evidence, including the state-agency physician's assessment, the subsequent medical evidence, Plaintiff's subjective complaints, and Dr. Durning's opinion, in determining that Plaintiff retained the residual functional capacity to perform light work with modifications (Tr. 23, Finding Nos. 6, 12).[6]

---

[6]     It should be noted here that although Dr. Durning stated that Dr. Steele, a treating physician, opined that Plaintiff was "totally and permanently disabled from his *regular* occupation" (emphasis added)(Tr. 283), there is no indication that Dr. Steele found that Plaintiff was unable to perform any work al all.  Moreover, the ALJ agreed with Dr. Steele's opinion, as the ALJ found that Plaintiff could not perform his past relevant work (Tr. 23, Finding No. 8,

It therefore appears that substantial evidence supports the ALJ's finding that Plaintiff could perform a significant range of light work as the objective medical evidence demonstrated that, despite his impairments, Plaintiff retained the residual functional capacity to perform light work with limited ability to reach overhead, push and pull in his lower and upper extremities, and with limited exposure to heights, dust, fumes, odors, gases, chemicals, and temperature extremes (Tr. 323-24).

Plaintiff also argues that the ALJ erred by mischaracterizing the evidence regarding his ability to perform activities of daily living.  Plaintiff first complains that the ALJ stated that Plaintiff could assist with dishes and laundry "occasionally," when Plaintiff indicated on the daily activities questionnaire only that he helped "once in awhile" (Pl's. Br. at 6).  As pointed out by the Commissioner, however, not only is "occasionally" a synonym for "once in awhile,"[7] but Plaintiff's testimony at the administrative hearing was that he might help his wife by throwing a load of laundry in the machine and "sometimes" puts dishes in the dishwasher and not that he did so "once in a while" (Tr. 306).  As such, it does not appear that the ALJ's use of the word "occasionally" to describe Plaintiff's

Tr. 283).

[7]  See http://thesaurus.reference.com/search?q=occasionally.

activities of daily living in her decision was a
mischaracterization (Tr. 20).

Plaintiff also claims that the ALJ mischaracterized
Plaintiff's statement regarding his attendance at football games
which, according to Plaintiff, was that he attends them "perhaps
three times per year" (Pl's. Br. at 7).  Review of the record
indicates, however, that Plaintiff represented in the
questionnaire that he attends high school football games
"sometimes" and that he attends movies "three times a year" (Tr.
78).  Thus, Plaintiff's assertion that the ALJ mischaracterized
his statement regarding his activities of daily living when she
indicted merely that he "attends football games," is contradicted
by the record (Tr. 20).

Plaintiff also argues that the ALJ erred by finding
that his ability to attend church, doctor's appointments and a
Bible Study group once a week was indicative of his ability to
perform substantial gainful activity.

To the extent that Plaintiff is suggesting that the ALJ
erred in finding his claims of pain and respiratory distress
incredible, the record is to the contrary.

Pursuant to federal regulations, the ALJ is required to
ascertain whether a claimant has a medically determinable
impairment that could reasonably cause the symptoms alleged and
then to "determine the extent to which a claimant is accurately

stating the degree of pain [or other symptoms] or the extent to which he or she is disabled by it."  20 C.F.R. § 404.1529; Hartranft v. Apfel, 181 F.3d at 362.  See Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)(Credibility determinations as to a claimant's testimony regarding his limitations are for the ALJ to make).  Factors that an ALJ may consider in making his credibility determination include a claimant's daily activities; the location, duration, frequency, and intensity of his pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medication; treatment other than medication; measures the claimant uses to relieve pain; and other factors.  20 C.F.R. §§ 404.1529(c)(3)(I)-(vii).

Further, an ALJ is not required to accept a claimant's testimony uncritically but may discredit a claimant's complaints of pain when there is contrary medical evidence in the record and the ALJ explains the basis for rejecting the complaints.  Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993).  The ALJ's credibility finding is entitled to deference and should not be discarded lightly, given her opportunity to observe the individual's demeanor.  Murphy v. Schweiker, 524 F. Supp. 228, 232 (E.D. Pa. 1981).

In this case, the ALJ considered the entire record, including the objective medical evidence, in determining that Plaintiff's subjective complaints were not entirely credible (Tr.

19).  Indeed, Plaintiff has received only conservative medical
treatment for his back impairment since May 1998, and admitted
that the only pain medication he uses is Motrin (Tr. 20).  See 20
C.F.R. §§ 404.1529(c)(3)(iv)-(vi).

          Moreover, as noted by the ALJ, the totality of
Plaintiff's activities of daily living and his demeanor at the
hearing, while not the only factor considered, undercut his
credibility (Tr. 20).  During the administrative hearing,
Plaintiff showed no signs of pain or respiratory distress (Tr.
20).  He testified that he helps his wife by throwing a load of
laundry in the washing machine, can put dishes in the dishwasher,
and can cut grass with a self-propelled mower (Tr. 306-07).  He
watches television, does crossword puzzles, and was able to go
fishing after he was injured at work (Tr. 308-09).  When he
applied for benefits, Plaintiff reported that he goes to church
once a week, goes to doctor appointments when needed, goes
grocery and mall shopping with his wife, "sometimes" goes to high
school football games, and goes to the movies three times a year
(Tr. 78).  He watches television for six hours each day, plays
games on the computer, reads the Bible and goes to a weekly study
group for two hours, drives three hundred to three hundred and
fifty miles each month, can take public transportation, visits
with friends, goes out to dinner, and goes for sightseeing rides
(Tr. 80-81).  It therefore appears that the ALJ's findings that

22

Plaintiff's complaints of pain and respiratory distress were not entirely credible has substantial support in the record.

Nor does <u>Frankenfield v. Bowen</u>, 861 F.2d 405 (3d Cir. 1988), or <u>Smith v. Califano</u>, 637 F.2d 968, 971 (3d Cir. 1981), upon which Plaintiff relies, compel a different result.  Indeed, Plaintiff cites to <u>Frankenfield</u>, for the proposition that the ability to perform daily living skills cannot be used to determine a plaintiff's ability to engage in substantial gainful employment.  <u>Frankenfield</u>, however, does not sweep quite so broadly.  Rather, the Court merely found that, absent any contrary medical evidence, the ALJ's observations of the plaintiff at the hearing and the plaintiff's testimony that he took care of his personal needs, performed limited household chores and occasionally went to church, could not provide the basis for rejecting the findings of three treating physicians who credited the plaintiff's subjective complaints as being consistent with the tests they had conducted and who found him disabled.  <u>Id.</u> at 408.

Here, unlike in <u>Frankenfield</u>, not only has Plaintiff not presented such compelling evidence from treating physicians but the ALJ's assessment of Plaintiff's residual functional capacity, contrary to Plaintiff's assertion, is based on much more than Plaintiff's ability to attend church and doctor's appointments (Tr. 18-20).

23

Plaintiff's reliance on Smith v. Califano, 637 F.2d 968, 971 (3d Cir. 1981), is equally misplaced.  In that case, the Court found that, in light of the unrebutted medical evidence that the plaintiff's ulcer was debilitating, the ALJ erred in finding that the plaintiff's claims of debilitating pain were not credible based solely on the fact that the plaintiff had the use of his hands, arms and legs, and the fact that he shopped and went hunting twice the year before.  Id. at 971-72.

Here, unlike in Smith, the ALJ did not rely solely on "sporadic and transitory" activities of daily living in finding that Plaintiff's allegations of disabling pain were not credible. To the contrary, the ALJ's consideration of Plaintiff's activities of daily living was only one part of his evaluation of Plaintiff's credibility (Tr. 19-20).  Indeed, the record establishes that the ALJ considered all of the evidence, including the objective medical evidence, the physicians' opinions, his conservative medical treatment, as well as his demeanor at the administrative hearing and Plaintiff's activities of daily activities before concluding that Plaintiff's allegations of disabling limitations and statements regarding his subjective symptoms were not entirely credible (Tr. 18-20).  As such, it does not appear that Smith serves to support Plaintiff's position.  See Walters v. Commissioner of Social Security, 127

24

F.3d 525, 531 (6th Cir. 1997) (An ALJ's findings regarding a claimant's credibility is entitled to substantial deference.)

Finally, Plaintiff argues that the ALJ erred because she failed to obtain the opinion of a medical advisor pursuant to SSR 83-20 to ascertain the onset date of Plaintiff's alleged disability (Pl's. Br. at 8-10).

The difficulty with plaintiff' argument, however, is that the onset date of Plaintiff's alleged disability does not appear to be in dispute as Plaintiff's claimed onset date is January of 1987, (Tr. 17, 302), which is clearly the date the ALJ used when she assessed the evidence. Indeed, the ALJ reviewed all the medical records which included reports from as early as January 1987, when Plaintiff was injured at work and claims he became disabled, through October of 1994 (Tr. 19-20). Although the ALJ ultimately determined that Plaintiff was not under a disability at any time prior to June 30, 1993, which is Plaintiff's last date insured, it does not negate that she accepted plaintiff's alleged onset date in rendering her decision. See SSR-83-20, 1983 WL 31249 *3 (Providing that the date of onset as alleged by the claimant should be used if it is consistent with the evidence available.) Notably, Plaintiff does not argue that he became disabled at some point in time other than January 1987, or that a medical advisor would have suggested another date. Under these circumstances, it cannot be said that

the ALJ erred by not consulting a medical advisor to determine a date that was not in dispute.

In this manner, neither of the cases relied upon by Plaintiff appears to apply.  In <u>Walton v. Halter</u>, 243 F.3d 703, 708-10 (3d Cir. 2001), the plaintiff sought child's disability insurance based on his deceased father's employment record. Although the ALJ found that the plaintiff suffered from a mental impairment which at some point became disabling he concluded that the onset date, although difficult to ascertain, was after his 22nd birthday making him ineligible for benefits.  The Court of Appeals for the Third Circuit found that because the impairment at issue in that case – bipolar disorder – was a slowly progressive one and because the alleged onset date was so far in the past that relevant medical records were unavailable, the ALJ should have consulted a medical advisor to determine the onset date rather than analyzing the evidence on his own.  <u>Id.</u> at 708-09.

In the instant case, however, not only did the ALJ not make a finding of disability but Plaintiff's alleged impairment was not a slowly progressing one nor was the alleged onset date so far in the past that medical records are unavailable.  Most important, however, the ALJ in this case accepted the Plaintiff's alleged onset date in reviewing the evidence including medical records supporting his claim that he was injured in January 1987,

and underwent an excision of the C5-C6 disc due to this work injury (Tr. 83, 300-03).

Similarly, in <u>Newell v. Commissioner</u>, 347 F.3d 541 (3d Cir. 2003), the plaintiff alleged that she was disabled since July 1, 1997, but was uninsured and could not afford medical care until almost a year later when her father gave her the money to pay for it. <u>Id.</u> at 543. Thus, the medical evidence of record consisted mostly of reports which post dated August 31, 1997, which is when her eligibility for benefits expired. The ALJ, citing the lack of evidence that the plaintiff sought or received regular medical treatments prior to 1998, denied benefits. The Third Circuit, however, found that the ALJ erred in finding that the claimant's lack of medical treatment undercut her credibility because the claimant explained that she could not afford medical treatment and concluded that the ALJ failed to consult a medical examiner to determine the onset date as required under SSR 83-20. <u>Id.</u> at 547-49.

Here, however, the ALJ did not dispute Plaintiff claimed onset date or infer some other onset date from the evidence, but rather determined, notwithstanding his alleged onset date, that Plaintiff was not under a disability between that date and his last date insured (Tr. 19-20). As such, the ALJ's failure to consult a medical advisor regarding Plaintiff's alleged onset date is of no moment and does not alter the fact

27

that the ALJ's finding that Plaintiff was not under a disability prior to June 30, 1993, is supported by substantial evidence.

Summary judgment is appropriate when there are no disputed material issues of fact, and the movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56; <u>Edelman v. Commissioner of Social Sec.</u>, 83 F.3d 68, 70 (3d Cir. 1996).  In the instant case, there are no material factual issues in dispute, and it appears that the ALJ's conclusion is supported by substantial evidence.  For this reason, it is recommended that Plaintiff's motion for summary judgment be denied, that Defendant's motion for summary judgment be granted, and that the decision of the Commissioner be affirmed.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have seven (7) days from the date of service of the objections to respond thereto.  Failure to timely file objections may constitute a waiver of any appellate rights.

Respectfully submitted,


s/ Amy Reynolds Hay
AMY REYNOLDS HAY
United States Magistrate Judge

Dated:   23 February, 2006

```
cc:  Hon. David S. Cercone
     United States District Judge

     Susan Paczak, Esq.
     ABES, BAUMANN
     810 Penn Avenue, 5th Floor
     Pittsburgh, PA 15222-3614

     Paul E. Skirtich,
     Assistant United States Attorney
     United States Attorney's Office
     700 Grant Street, Suite 400
     Pittsburgh, PA 15219
```